## OLIVER WHITWORTH v. STATE.

No. A-10395.   April 25, 1945.

Reversed on Rehearing  May 23, 1945.

(158 P. 2d 364;  159 P. 277.)

Wall & Green, of Sallisaw, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Jess L. Pullen, Asst. Atty. Gen., and W. S. Agent, Co. Atty., of Sallisaw (R. O. Ingle, Co. Atty., of Sallisaw, and Randell S. Cobb, Atty. Gen., on rehearing), for defendant in error.

BAREFOOT, P. J.  Defendant, Oliver Whitworth, was charged in the district court of Sequoyah county with the crime of burglary, second degree; was tried, convicted and sentenced to serve a term of five years in the State Penitentiary, and has appealed.

The only assignment of error is that the court erred in refusing to grant the motion for new trial on the ground of newly discovered evidence.

Defendant was charged jointly with his brother, Leon Whitworth, with burglarizing the home of Henry Howe, in Sallisaw, Sequoyah county, on February 20, 1939, and taking therefrom certain household goods and furniture, which were later sold in the city of Muskogee to Homer Dade, a negro.

At his request, defendant was granted a severance, and had a separate trial.  At the trial, defendant was

positively identified by Homer Dade as being one of two men who came to his place of business in Muskogee and from whom he purchased the household goods and furniture later identified as the property stolen from Henry Howe's home.

Homer Dade testified that after purchasing the property for the sum of $35 and having the same taken to his home in Muskogee, he became suspicious, and went in his car to overtake the truck in which the furniture had been delivered. On being accosted, one of the parties in the truck jumped out and ran across a field. The other party, whom Dade positively identified as the defendant, and from whom he purchased the property, returned $30 of the $35 he had paid for the furniture, claiming that they had spent $5, and promised to return and get the furniture. He testified that the next morning this defendant and one Lee Scott came to his place of business, and Lee Scott told the witness he would have to give the money back to defendant, and that: "Lee pulled out some kind of paper showing that he was a deputy sheriff, it was signed by Mr. Hutchins, the sheriff, and he said, 'There is absolutely nothing wrong with it.'" The witness then decided to keep the property, and gave the defendant the $30 returned to witness the night before, and he kept the household property until the sheriff and Henry Howe came to his place and identified it as the property of Mr. Howe.

Defendant testified that he did not know anything about the crime, and that he did not commit it. He also introduced evidence of those with whom he was employed, which tended to prove an alibi. These witnesses testified that he was not away from his work, and could not have made the trip from Sallisaw to Muskogee with the truckload of household goods at the time of the burglary.

Leon Whitworth was a witness for his brother, the defendant. He testified that neither he nor his brother had any knowledge of the crime; that they did not burglarize the Henry Howe home; did not take the furniture to Muskogee in a truck, and did not sell it to Homer Dade. Leon Whitworth was later tried, convicted, and sentenced to serve a term of five years in the State Penitentiary.

The verdict of the jury was returned in this case on June 24, 1941. A motion for new trial was made and overruled on June 28, 1941, and judgment and sentence entered on the same day.

Thereafter, and on October 21, 1941, defendant filed his affidavit for new trial upon the grounds of newly discovered evidence. Because of the shortness of time to perfect an appeal, the court, on November 4, 1941, set aside the judgment and sentence theretofore entered, then overruled the motion for new trial, and again sentenced the defendant. This action is in no way contested in this appeal.

Attached to the second motion for new trial was an affidavit of Leon Whitworth, the brother of this defendant and his codefendant, who was at that time in the State Penitentiary serving his sentence for burglary of the Henry Howe home.

In this affidavit, Leon Whitworth related a story completely different to his testimony at the trial of the defendant. He admitted the burglary of the Howe home, stealing the household goods, and selling the same to Homer Dade. He stated that the man with him upon that occasion was Rex Lockhart, and not his brother, the defendant; that Rex Lockhart was with him at the time of the burglary, and that Rex Lockhart's truck was

used to convey the furniture and household goods to Muskogee. He stated that they loaded the furniture and household goods in the truck soon after midnight, and drove to the home of Bert Henry, a brother-in-law of Rex Lockhart, in Okmulgee, and had breakfast. That they were advised by Bert Henry that there was no sale for second hand furniture in Okmulgee, and they then went to Muskogee, where the property was sold to Homer Dade, as testified to by him. He denied that his brother, Oliver Whitworth, this defendant, had anything to do with this burglary, or knew anything about it.

Also attached to the motion for new trial was an affidavit of J. Fred Green, W. B. Wall and Tom Douglas (Mr. Green and Mr. Wall are now the attorneys for defendant). In this affidavit they state that in August, 1941, they went to the home of Bert Henry, in Okmulgee. That in conversation with him, he stated that a truckload of furniture, as stated by Leon Whitworth in his affidavit, had been to his home, and that Oliver Whitworth was not along. That Mr. Henry did not admit that his brother-in-law, Rex Lockhart, was there, but did state that if placed upon the witness stand he would tell the truth about the matter.

A second affidavit of Tom Douglas attached to the motion was to the effect that he had a conversation with Rex Lockhart in which he admitted to him that he knew all about the burglary, and that it was his truck that hauled the furniture away. That Rex Lockhart told him that he knew of his own knowledge that Oliver Whitworth had nothing to do with breaking into the home of Henry Howe and taking the furniture therefrom. Rex Lockhart was a nephew of the former wife of Tom Douglas.

There was also attached to the motion, affidavits

of two of the jurors who served on the case of defendant, in which they stated that they had read the affidavit of Leon Whitworth, and if this evidence had been produced at the trial, they would have voted for a verdict of not guilty, rather than a verdict of guilty.

Defendant did not attach an affidavit by Bert Henry or Rex Lockhart to his motion for new trial. A transcript of the testimony taken at the preliminary hearing of Rex Lockhart, before the county court, is attached to the motion for new trial. Leon Whitworth, Bert Henry and Tom Douglas testified. At the close of their testimony, the court sustained a demurrer to the evidence, and the case against Rex Lockhart was dismissed.

The testimony of Bert Henry at the preliminary trial of his brother-in-law, Rex Lockhart, was most evasive. He refused to testify that either the defendant or his brother Leon Whitworth was at his home the morning that the truck loaded with the furniture was there. He admitted that Rex Lockhart and one other man arrived at his home early one morning in a truck and had breakfast at his home, but his answers to direct questions as to the identity of the other man were, "I don't remember."

The statute with reference to the granting of a new trial by reason of newly discovered evidence (Tit. 22 O. S. 1941 § 952) is as follows:

"A court in which a trial has been had upon an issue of facts has power to grant a new trial when a verdict has been rendered against a defendant by which his substantial rights have been prejudiced, upon his application in the following cases only: . . .

"Seventh. When new evidence is discovered, material to the defendant, and which he could not with reasonable diligence have discovered before the trial. . . .

When a motion for new trial is made on the ground of newly discovered evidence, the defendant must produce at the hearing in support thereof affidavits of witnesses, or he may take testimony in support thereof as provided in Section 5781 [Tit. 22 O. S. § 494] and if time is required by the defendant to procure such affidavits or testimony, the court may postpone the hearing of the motion for such length of time as under all the circumstances of the case may seem reasonable. . . ."

The Criminal Court of Appeals has many times held that the granting of a new trial by reason of newly discovered evidence is within the sound discretion of the trial court, and that unless this discretion is abused, the judgment will not be set aside. Horn v. State, 13 Okla. Cr. 354, 164 P. 683; Peters v. State, 35 Okla. Cr. 367, 250 P. 1032; Newman v. State, 35 Okla. Cr. 296, 250 P. 554; Vice v. State, 54 Okla. Cr. 405, 22 P. 2d 1039; Calloway v. State, 38 Okla. Cr. 418, 262 P. 696.

In some cases the motion has been sustained where the evidence against the defendant was very weak and the court came to the conclusion that the statements made in the affidavits were true and that justice demanded a new trial. Leary v. State, 34 Okla. Cr. 386, 246 P. 662; Cope v. State, 23 Okla. Cr. 161, 213 P. 753.

In the instant case the defendant is positively identified upon several different occasions by the witness Homer Dade, who bought the stolen property. He identified him as the man who sold the property to him, and as the one who returned a part of the money when witness overtook the parties on the road. He identified him as the man who came to his home the following morning with Lee Scott and demanded that he pay the money back and he returned the money to this defendant; and also identified him in the county jail, at the preliminary hearing, and at the trial in the district court.

It is true that the witness Jack Treadway, who saw the parties when they first brought the property on the truck to Muskogee, was unable to identify the defendant as one of the men.

The affidavit of Leon Whitworth, the codefendant and brother of this defendant, was made by him after he had testified at the trial of defendant, and had positively sworn that neither he nor the defendant had burglarized the Howe home, or taken the property. It was made after he had been tried and convicted, and was serving a term in the State Penitentiary for the identical burglary with which the defendant stands charged. In his testimony at the preliminary hearing of Rex Lockhart, he stated that he and Lee Scott had used Rex Lockhart's truck prior to the burglarizing of the Howe home. No doubt the court came to the conclusion that after his conviction and sentence, he decided to "take the whole rap," and attempted to free his brother. This practice has never been looked upon with favor by the courts. Wells v. State, 16 Okla. Cr. 461, 184 P. 465; Ryal v. State, 16 Okla. Cr. 266, 182 P. 253 and cases cited.

As has been stated, defendant did not attach an affidavit by Rex Lockhart to the motion for new trial, but attached an affidavit of a party as to a conversation had with him. While we do not question the statements made in this affidavit, the courts have often denied motions for new trials where the affidavits attached were made by others as to conversations had with the witnesses. Armstrong v. State, 61 Okla. Cr. 352, 68 P. 2d 114; Bowlegs v. State, 9 Okla. Cr. 69, 130 P. 824.

In the case of Wells v. State, supra, a very similar case in so far as the motion for new trial is concerned, it is said [16 Okla. Cr. 461, 184 P. 466]:

"The defendant filed a motion for a new trial upon the ground, among other grounds, of newly discovered evidence; the newly discovered evidence being contained in an affidavit made by said A. J. Seimen while in jail after his conviction, in which he fully refuted the evidence given by him on the trial of this case, and asserted that he alone, without the knowledge or assistance of the defendant, committed the larceny charged while at the dance, completely exonerating the defendant from any complicity therein in any manner, and that he (affiant) had not communicated the facts stated in said affidavit to the defendant, or to any one, until after the trial in this case had been had. The court announced that it did not believe the averments of the said affidavit, overruled the motion for a new trial, and the defendant excepted. . . .

"Seimen on the trial of the case having testified that he had no knowledge of, or connection with the commission of the larceny charged, certainly no evidential weight could be given to the said newly discovered evidence, the averments in his affidavit 'that he alone committed the crime charged, and did so without the knowledge or assistance of the defendant,' and the court did not err in overruling the motion for a new trial."

In the case of Armstrong v. State, supra [61 Okla. Cr. 352, 68 P. 2d 117], the court said:

"We do not think the court abused its discretion in overruling the motion for a new trial in this case. It will be noted that the defendant does not even attach the affidavit of the witness Ernest Tennyson to his motion. He makes the affidavit himself purporting to set out what Tennyson had told him. From the time he was arrested to the time of his trial he had been in jail with the witness and had used him as a witness in his defense at the trial. There is nothing to show that due diligence was used by the defendant to find out what the testimony of the witness Tennyson would be. It looks like this witness, after hearing of the verdict against the defendant

and the number of years that had been given him, decided it would be best for him to enter his plea of guilty and make such terms as he could with the county attorney. The sentence which he received justifies this assumption. The court may have come to the conclusion that the witness Tennyson was seeking to take the blame after he had received his sentence and thereby secure relief for the defendant. . . .

"We are of the opinion that the motion for a new trial wholly fails to show due diligence on the part of the defendant as contemplated by the statute of this state. See section 3120, O. S. 1931 (22 Okla. St. Ann. § 952); 16 C. J. pp. 1181, 1183, 1187, §§ 2710, 2713; Lawson v. State, 36 Okla. Cr. 349, 254 P. 110; Ball v. State, 47 Okla. Cr. 145, 286 P. 808; Harper v. State, 7 Okla. Cr. 581, 124 P. 1116; Johnson v. State, 5 Okla. Cr. 1, 112 P. 760; Perry et al. v. People, 38 Colo. 23, 87 P. 796; Hurst v. Territory, 16 Okla. 600, 86 P. 280."

In the case of People v. Tallmadge, 114 Cal. 427, 46 P. 282, and which is quoted with approval in the case of Ryal v. State, supra [16 Okla. Cr. 266, 182 P. 259], it is said:

"Applications on the ground of newly discovered evidence are addressed to the discretion of the trial court, and its action will not be set aside except for an abuse of such discretion, and the presumption is that the discretion was properly exercised; and it has been repeatedly held by this court that such applications are to be regarded with disfavor. Hayne on New Trial and Appeal, par. 87, and cases there cited; People v. Sutton, 73 Cal. 243, 15 P. 86; People v. Freeman, 92 Cal. 359, 28 P. 261. It cannot be said that, as a matter of law, a new trial should be granted whenever an important witness against the defendant shall make an affidavit that he committed perjury in his testimony; if that were so, justice would be defeated in many grave cases. Notwithstanding such an affidavit, the appellate court will rest largely upon the discretion of the judge who heard the trial, and will

not disturb his ruling except in clear cases of abuse of discretion."

It is true that no man should suffer for a crime he did not commit. But under the decisions in many of the cases heretofore cited, this court cannot hold that the trial court abused its discretion in refusing to grant a new trial to this defendant. Nor can we say that the statements made by Leon Whitworth in his affidavit, and at the preliminary hearing of Rex Lockhart, after his conviction and while serving in the penitentiary, are true. It would be setting a dangerous precedent to permit a defendant to go upon the witness stand and commit perjury by testifying to his innocence, and that of his codefendant, and then when convicted make an affidavit admitting his perjury, especially in a case such as the instant one, where the codefendant is his own brother. He took the chance of having the jury render a verdict of not guilty, and when this failed, changed his story. No further punishment was meted out to him by reason of the change in his testimony. No doubt the trial court who heard all of the evidence came to the conclusion that it was only an attempt on his part to save his brother from going to the penitentiary. The record discloses that subsequent to his conviction in connection with this burglary charge, Leon Whitworth had entered a plea of guilty to stealing an automobile, and received a five-year sentence in that case.

We are of the opinion that the trial court did not abuse its discretion in overruling the motion for new trial by reason of newly discovered evidence.

The judgment and sentence of the district court of Sequoyah county is affirmed.

JONES, J., concurs. DOYLE, J., not participating.

## On Rehearing.

Former opinion set aside and judgment below reversed and cause remanded.

BAREFOOT, P. J.   A petition for rehearing has been filed in this case, and the attention of the court has been called to a letter filed with the clerk of the court, written by the county attorney of Sequoyah county, who tried this case in the district court of that county. The writer of this opinion had not examined the letter when the opinion was prepared.

In this letter, the county attorney states:

"Lockhart told us that Oliver had nothing to do with, and didn't even know about the commission of the crime and in substance told us that the crime was committed by the persons and in the manner that Leon had testified at his, Lockhart's, preliminary hearing, adding that his brother, Sam Lockhart, was there and helped some when they first started loading the furniture, but that he ran off when he saw the lights of a car coming in their direction, and that Lee Scott, who is now dead, also helped with the furniture, that they hauled it on his, Lockhart's truck, south to Stigler, then to Okmulgee and on to Muskogee, where they sold it.  We then talked with Sam Lockhart, who is now in the army and was here on leave at that time, and he told us the same things, that is, up to where he left them when they were loading the furniture."

Since the motion for rehearing has been filed, the county attorney who prosecuted this defendant has expressed to this court that from his personal examination of the facts, he is now convinced that this defendant did not commit the crime for which he was convicted, and had no part therein.

While this statement in no way binds the court, we are now convinced that there is too much doubt as to whether this defendant was actually present and participated in the commission of this crime, or that he even knew of its commission.

From the record it clearly appears that Rex Lockhart should have been held for trial in the district court, by the justice of the peace.

The evidence that only two parties came with the truck and furniture to the home of Bert Henry in Okmulgee on the morning of February 20, 1939, and that only two parties were present when the furniture was sold to Homer Dade in Muskogee, and only two persons were present at the time Dade overtook the truck, are circumstances which tend to corroborate the statements made by Leon Whitworth in his affidavit attached to the motion for new trial, and his evidence given at the preliminary hearing of Rex Lockhart.

The only positive testimony against the defendant is his identification by the witness Homer Dade. There now appear too many circumstances that he could have been mistaken in his identity of the defendant, and that the party with whom he dealt was Leon Whitworth, the brother of the defendant.

This court does not desire that anyone be imprisoned for a crime he did not commit. Our investigation of this case now convinces us that the judgment of the district court of Sequoyah county should be reversed and remanded, and the present county attorney of Sequoyah county should fully investigate the facts and take such action as he deems the facts justify.

252

The judgment of the district court of Sequoyah county is reversed and remanded.

.JONES, J., concurs.  DOYLE. J., not participating.